**NOT FOR PUBLICATION**

## In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 25-10901

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

PEDRO JOSE SILVA OCHOA,
a.k.a. Tata,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:23-cr-20173-KMM-3

_____

Before NEWSOM, BRASHER, and ABUDU, Circuit Judges.

PER CURIAM:

Pedro Jose Silva Ochoa appeals his 327-month sentence for conspiracy to kidnap an internationally protected person, 18 U.S.C.

§ 1201(c).  On appeal, he argues that the district court's sentence is procedurally unreasonable, because, in his view, the court erroneously applied U.S.S.G. § 2A4.1(b)(5), and is substantively unreasonable under the relevant sentencing factors, codified at 18 U.S.C. § 3553(a).  The government moves to dismiss Silva Ochoa's appeal, arguing that Silva Ochoa knowingly and voluntarily waived his right to appeal as part of his plea agreement.  For the reasons we explain, we agree with the government and dismiss the appeal.

We review the validity and scope of an appeal waiver *de novo*.  *King v. United States*, 41 F.4th 1363, 1366 (11th Cir. 2022).  Sentence appeal waivers are enforceable if they are made knowingly and voluntarily.  *Id*. at 1367.  To enforce a waiver, "[t]he government must show that either (1) the district court specifically questioned the defendant concerning the sentence appeal waiver during the Rule 11 colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver."  *United States v. Bushert*, 997 F.2d 1343, 1351 (11th Cir. 1993); *see also United States v. Boyd*, 975 F.3d 1185, 1192 (11th Cir. 2020) (noting that the "touchstone for assessing" if a sentence appeal waiver was made knowingly and voluntarily "is whether 'it was clearly conveyed to the defendant that he was giving up his right to appeal under *most* circumstances'" (alterations adopted) (emphasis in original) (quoting *Bushert*, 997 F.2d at 1352–53)).  "We have consistently enforced knowing and voluntary appeal waivers according to their terms."  *United States v. Bascomb*, 451 F.3d 1292, 1294 (11th Cir. 2006).  "An appeal waiver includes the waiver of the right to appeal difficult or debatable legal issues or

even blatant error." *United States v. Grinard-Henry*, 399 F.3d 1294, 1296 (11th Cir. 2005).

Here, Silva Ochoa entered into a plea agreement with the government which, relevantly, contained three paragraphs, under Section "E.," that were titled: "<u>Appellate Waiver</u>," and read:

15. The defendant is aware that [28 U.S.C. § 1291] and [18 U.S.C. § 3742] afford the defendant the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, the defendant hereby waives all rights conferred by Sections 1291 and 3742 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure and/or an upward variance from the advisory guideline range that the [district c]ourt establishes at sentencing. The defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in [18 U.S.C. §] 3742(b) and [28 U.S.C. §] 1291. However, if the United States appeals the defendant's sentence pursuant to Sections 3742(b) and 1291, the defendant shall be released from the above waiver of his right to appeal his sentence.

16. The defendant further hereby waives all rights conferred by [28 U.S.C. §] 1291 to assert any claim that (1) the statute(s) to which the defendant is plead-

ing guilty is/are unconstitutional; and/or (2) the admitted conduct does not fall within the scope of the statute(s) of conviction.

17. By signing this agreement, the defendant acknowledges that [he] has discussed the appeal waiver set forth in this agreement with the defendant's attorney. The defendant further agrees, together with this Office, to request that the [district c]ourt enter a specific finding that the defendant's waiver of his right to appeal the sentence imposed in this case and his right to appeal his conviction in the manner described above was knowing and voluntary.

The plea agreement also informed Silva Ochoa that the district court could "impose a statutory maximum term of imprisonment of up to any term of years or for life, followed by a term of supervised release of up to five years." The agreement also explained that Silva Ochoa was reserving his right to "argue that" enhancements under U.S.S.G. §§ 2A4.1(5) and 3B1.1 should not apply but would agree that U.S.S.G. § 2A4.1(2)(B) applied. He also agreed that none of these recommendations were binding on the district court.

Silva Ochoa signed and dated the plea agreement, and his attorney did so as well. In exchange for Silva Ochoa's entering into the plea agreement, the government dismissed several other pending charges against him. At Silva Ochoa's plea hearing, he was placed under oath, and he consented to having a magistrate judge conduct the hearing. He confirmed that he was thinking clearly,

was not under the influence of any medications, and did not have any physical or mental conditions that would prevent him from understanding the proceedings. He confirmed that he understood that his sentence would "be calculated pursuant to the sentencing guidelines," which would provide an advisory range. He also agreed that the plea agreement had been translated for him into Spanish, that he had read and discussed each paragraph with his attorney, that he fully understood the agreement, and that he had signed it.

The magistrate judge informed Silva Ochoa that the sentence he received could be greater than what he or his counsel had estimated and that the court was "not bound to follow [the] recommendations" in the plea agreement. The magistrate judge also advised him that his plea agreement provided that, "if the court impose[d] sentencing enhancements under the sentencing guidelines for sexual exploitation and g[ave] [him] an aggravating role in the offense, then the government [would] recommend that [he] be sentenced at the low end of the sentencing guidelines range," and Silva Ochoa confirmed that he understood.

The magistrate judge told Silva Ochoa that, by pleading guilty, he would be "agree[ing] to give up the right to appeal [his] sentence except under specific circumstances, which are set forth in paragraphs 15 through 17 of [the Appellate Waiver section]." Silva Ochoa confirmed that he had discussed the appeal waiver with his attorney. The magistrate judge then explained that, under the plea agreement, Silva Ochoa was "agreeing to give up the right

to appeal [his] sentence unless one of the following three things happens: [e]ither the government files an appeal; the sentence exceeds the maximum penalty permitted by statute; or the sentence results in an upward departure or variance from the guideline range that the court establishes at [his] sentencing." Silva Ochoa confirmed that he understood that he was "giving up the right to appeal [his] sentence" except for in the situation where "one of those three things happen[ed]."

Silva Ochoa's counsel verified that the magistrate judge had accurately summarized the appeal waiver, and the magistrate judge found that the waiver was knowing, voluntary, and fully informed. Silva Ochoa confirmed that no one had threatened him, coerced him, or made any promises or assurances to him in exchange for his guilty plea. Silva Ochoa pled guilty to Count One.

At the magistrate judge's recommendation, the district court accepted the plea. The magistrate judge's recommendation explicitly noted that Silva Ochoa had "acknowledged that he agreed to waive his rights to appeal his sentence, unless the Court sentences [him] above the maximum penalty prescribed by law, the Court varies and/or departs upward from the top of the Sentencing Guidelines range applicable to [him], or the Government appeals [his] sentence." It also found that Silva Ochoa had "knowingly and voluntarily waived his appellate rights." Silva Ochoa did not object to the magistrate judge's recommendation.

"There is a strong presumption that the statements" Silva Ochoa "made during" his guilty plea "colloquy [we]re true."

*United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). Given the magistrate judge's discussion of the appeal waiver provision and its reference to the specific paragraph that contained the waiver's exceptions, we are satisfied that "the district court specifically questioned [Silva Ochoa] concerning the sentence appeal waiver," *Bushert*, 997 F.2d at 1351, and that "it was clearly conveyed to [Silva Ochoa] that he was giving up his right to appeal under *most* circumstances," *Boyd*, 975 F.3d at 1192 (alterations adopted) (quoting *Bushert*, 997 F.2d at 1352–53). Moreover, the magistrate judge's recommendation explicitly stated that Silva Ochoa was waiving his right to appeal and had done so knowingly and voluntarily, and Silva Ochoa did not object to that recommendation. Accordingly, we apply the waiver according to its terms.[1]

Silva Ochoa resists this conclusion, arguing that the plea agreement was "ambiguous as to [his] right to appeal from a sentence exceeding the guideline range advocated by the defense at

---

[1] We have recognized that, in certain circumstances, we might not apply an otherwise valid appeal waiver. "The most obvious [circumstance] is a jurisdictional defect; an appeal waiver cannot confer jurisdiction on a court where none exists." *King*, 41 F.4th at 1367. In addition, "[w]e will review a sentence 'based on a constitutionally impermissible factor such as race.'" *Id.* (quoting *Bushert*, 997 F.2d at 1350 n.18). We have also "suggested that perhaps 'extreme circumstances'—like a 'public flogging' sentence—might justify overlooking an appeal waiver as well." *Id.* (quoting *United States v. Howle*, 166 F.3d 1166, 1169 n.5 (11th Cir. 1999)). Finally, even if a defendant enters a plea agreement, we will review "a sentence imposed in excess of the maximum penalty provided by statute." *Id.* (quoting *Bushert*, 997 F.2d at 1350 n.18). In any event, none of these circumstances are present here.

sentencing." However, the plain language of the waiver belies this argument. *See United States v. Hardman*, 778 F.3d 896, 900 (11th Cir. 2014) ("Plea agreements, like contracts, should be interpreted consistent with the parties' intent. The language of a plea agreement should be given its ordinary and natural meaning unless the parties indicate otherwise." (citation omitted)). The waiver's exception for "an upward departure and/or an upward variance" applied to the "advisory guideline range that the [district *c]ourt establishe[d]* at sentencing," not to the guideline range that Silva Ochoa advocated for at sentencing. Moreover, contrary to Silva Ochoa's argument that his plea colloquy was "confusing," the magistrate judge correctly informed Silva Ochoa that he was "giv[ing] up the right to appeal [his] sentence except under specific circumstances" and then advised him of these exceptions, including where his "sentence result[ed] in an upward departure or variance from the guideline range that the court establishe[d] at . . . sentencing." Finally, while Silva Ochoa is correct that the plea agreement reserved his right to oppose the enhancements he is challenging on appeal, he is incorrect that that reservation of rights applied to his appeal; the plain language of the waiver makes it clear that the reservation applied to the sentencing proceedings, not to any appeal.

Silva Ochoa's claims on appeal, which challenge the court's application of sentencing enhancements and the substantive reasonableness of his sentence, fall squarely within the appeal waiver's provision that he was waiving "all rights conferred by [28 U.S.C. §] 1291 and [18 U.S.C. §] 3742 to appeal any sentence imposed." None of the waiver's exceptions apply. First, Silva Ochoa's 327-month

sentence and 3-year term of supervised release did not exceed the statutory maximum sentence of life imprisonment or 5 years' supervised release.    *See* 18 U.S.C. §§ 1201(a), (c), 3559(a)(1), 3583(b)(1).[2]    Second, Ochoa's 327-month sentence did not constitute "an upward departure and/or an upward variance from the advisory guideline range that the [district c]ourt establishe[d] at sentencing," which was 262 to 327 months' imprisonment, and his 3-year term of supervised release also fell within his guideline range.    Finally, the government did not initiate an appeal of Silva Ochoa's sentence.

For these reasons, we conclude that Silva Ochoa knowingly and voluntarily waived his right to appeal his sentence and his challenges on appeal fall within the scope of that waiver.    Accordingly, we **GRANT** the government's motion to dismiss.    *See Bascomb*, 451 F.3d at 1294; *Bushert*, 997 F.2d at 1351.[3]

**DISMISSED.**

---

[2] Under 18 U.S.C. § 1201, a defendant convicted of kidnapping "an internationally protected person . . . shall be punished by imprisonment for any term of years or for life."    18 U.S.C. § 1201(a)(4).    If two or more persons conspire to violate 18 U.S.C. § 1201 and "do any overt act to effect the object of the conspiracy, each shall be punished by imprisonment for any term of years or for life."    *Id*. § 1201(c).    An offense that carries a maximum term of life imprisonment is a Class A felony.    *Id*. § 3559(a)(1).    Unless otherwise provided, a Class A felony carries a maximum term of supervised release of five years.    *Id*. § 3583(b)(1).

[3] In its motion to dismiss, the government notes that the Supreme Court has granted a petition for writ of *certiorari* in a case that "addresses the limits of appeal waivers agreed to as part of a guilty plea."    *See United States v. Hunter*,

No. 24-20211, 2024 WL 5003582 (5th Cir. Dec. 6, 2024), *cert. granted*, No. 24-1063, 2025 WL 2885281 (2025).  We remain bound to apply our binding precedent until it is overruled, however.  *See Thompson v. United States*, 924 F.3d 1153, 1156 n.4 (11th Cir. 2019) ("[W]e are required to apply . . . binding precedent, [and] a grant of *certiorari* does not constitute a change in the law or a basis for relief."), *abrogated in part on other grounds by United States v. Davis*, 588 U.S. 445 (2019).